UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-cv-14067-CANNON
(Case No.: 21-cr-14044-CANNON)

JUAN ANTONIO GARCIA,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

**UNITED STATES OF AMERICA'S ANSWER TO GARCIA'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

    The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds in opposition to movant Juan Antonio Garcia's ("Garcia") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence and Memorandum of Law (the "Motion") (CVDE 1; 1-1).[1] Garcia presents seven ineffective assistance of counsel claims including: (A) whether his trial counsel failed to (1) communicate and inform Garcia of the circumstances and consequences of pleading guilty; (2) conduct an adequate and independent pretrial investigation; (3) attempt to negotiate a favorable plea agreement; and (B) whether his sentencing counsel failed to (1) discuss and explain the pre-sentence investigation report ("PSR") to Garcia; (2) file substantive objections to the PSR; (3) object to Garcia's sentence being substantively unreasonable; and (4) to file a notice of appeal.

---

[1] The government will refer to documents in Garcia's instant civil § 2255 case (23-cv-14067) as "CVDE" and to documents in his underlying criminal case (21-cr-14044) as "DE."

1

## **COURSE OF PROCEEDINGS IN THE UNDERLYING CRIMINAL CASE**

In December of 2021, a federal grand jury federal grand jury sitting in the Southern District of Florida charged Garcia with two counts including attempted production of a visual depictions of sexual exploitation of minors in violation of 18 U.S.C. §§2251(a) and (e) (count I); and attempted enticement of a minor in violation of 18 U.S.C. § 2422(b) (count II) (DE 13).

On April 4, 2022, Garcia pled guilty to both counts in the indictment (DE 38). In anticipation of sentencing, a pre-sentence investigation report ("PSR") was prepared which set Garcia's guideline imprisonment range at 292 to 365 months, based on a total offense level of 40 and a criminal history category of I (PSR ¶ 71). On July 9, 2022, the Court sentenced Garcia to 310 months of imprisonment, followed by 20 years of supervised release, a $10,000 fine, a $20,000 special assessment, and an additional $200 special assessment (DE 57). Garcia did not file a direct appeal.

On March 7, 2023, Garcia filed the instant motion seeking relief pursuant to 28 U.S.C. § 2255 (CVDE 1; 1-1). Garcia is incarcerated at FCI Petersburg Medium in Virginia and his release date is set for December 5, 2043 (https://www.bop.gov/inmateloc/).

**Offense Conduct**[2]

A 15-year-old boy (hereinafter "the victim") was befriended by 30-year-old Sewall's Point Police Officer Juan Antonio Garcia and worked part time on Garcia's food truck in Martin County, Florida. After the victim's father noticed the victim stopped working at the food truck, he reviewed the victim's cell phone text messages, where he discovered disturbing messaged between Garcia and the victim.

---

[2] The facts in this section are taken almost verbatim from the factual proffer, which Garcia signed on April 3, 2022 (DE 15).

In June 2021, a text message conversation began between the victim and Garcia, and within weeks Garcia began focusing the conversations almost exclusively on sexual topics. In response to the victim's attempts at making conversation about school and work, Garcia often made numerous random references to the victim masturbating. Garcia requested the victim to accompany him to Blind Creek Beach, a well-known nudist beach in the area. Gradually, Garcia began asking the victim for explicit details about his sexual history, experiences, and masturbation habits. Upon learning the victim had a girlfriend, Garcia pressed the victim for details about their sexual activities and offered to provide the victim condoms. Once he met the victim to give him the condoms, Garcia next began texting to encourage the victim to masturbate with the condom on to "see how it feels." After Garcia was unsuccessful in enticing the victim to send him a naked photograph, he requested a meeting at the victim's house, at a time when he knew the victim's parents were away, for the victim to "try on" different styles of condoms with Garcia present.

On November 22, 2021, after the 15-year-old victim's father discovered the messages and reported them to Martin County Sheriff's Office (MCSO), the father also gave a MCSO detective ("UC") permission to pose as the victim, using the victim's phone. Later that day, the UC continued a conversation with Garcia from the previous night. Garcia, believing he was still texting the victim, instructed the UC to record a video of himself masturbating, and then send him the video, which constitutes a visual depiction of a minor engages in sexually explicit conduct.

A few minutes later, Garcia asked the victim if he had ever considered "giving a bj." The UC understood that "bj" meant oral penetration or union with the sexual organ of another. When the undercover detective responded that he was open to the idea, Garcia replied, "That's cool I could use one," and asked the victim several times if he was offering to perform oral sex on Garcia. Despite the undercover detective's attempt to shift the conversation to the topic of learning to

3

drive, Garcia continued to press the victim to discuss the idea of performing oral sex on a man, emphasizing that the victim could trust him.

The following day, on November 23, 2021, Garcia messaged the victim in order to arrange to meet up to "experiment" sexually. The UC told Garcia that he was busy and did not have time to meet up that day, but Garcia insisted, "Let's do it today. It'll be quick." The UC asked Garcia what he wanted to do, and Garcia responded, "You know I could use a bj but [I'll] be good with hj[,] if that's all you feel like doing." The undercover understood "hj" to mean a handjob," or manual stimulation/masturbation, which constitutes "sexual activity for which any person can be charged with a criminal offense," under Florida law. Garcia then instructed the victim to meet him at a nearby park in 30 minutes.

MCSO detectives arrived at the designated meeting spot and arrested Garcia. In a post-*Miranda* interview with law enforcement, Garcia admitted to knowing that the victim was 15 years old, and that on numerous occasions, he asked the victim to produce and send sexually explicit images and videos to him. He admitted that, on November 22, 2021, he was on duty in his Sewall's Point Police Department patrol car, when he requested the victim send him a video of the victim masturbating. Garcia claimed he was at the park to talk to the victim about "the blowjob and the handjob." Garcia later admitted, after being confronted with the text messages, that he was "horny" and travelling to get oral sex from the victim, although he planned to let the victim decide whether to stimulate him orally or manually.

Garcia told enforcement that the phone he had used to communicate with the victim, an Apple iPhone 11, model number MHCP3LL/A, bearing the serial number F4HFPP98N72J, was in his vehicle, provided his passcode for the phone, and consented to law enforcement reviewing the text message conversation with the victim. After receiving his voluntary consent, law

4

enforcement unlocked Garcia's cell phone and observed the conversation between Garcia and the undercover detective posing as the victim.

Both Garcia and the victim used Apple iPhones, which had been manufactured outside the state of Florida, to send a receive text messages from each other.

## LEGAL STANDARD AND ANALYSIS

### A. Whether the Motion is Timely

Under § 2255, the one-year limitations period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4). The one-year limitations period normally begins to run on the date on which a judgment of conviction becomes final. In this case, since the Court entered judgment on July 11, 2022, Garcia's conviction became final on July 25, 2022 (DE 62). *See Ventura v. United States*, 2020 WL 5230943, at *1 (11th Cir. Aug. 5, 2020) (if an appeal is not filed, the one-year limitations period begins 14 days after final judgment is entered by the court). Garcia therefore had until July 25, 2023 to timely file the instant § 2255 Motion. Garcia, filed the Motion on March 7, 2023, when he placed it in the prison mailing system (CVDE 1). *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) ("a prisoner's pro se § 2255 motion is deemed filed the date it is delivered to prison authorities for mailing"). The Motion is, therefore, timely.

### B. Whether Garcia's Claims are Meritorious

Claims of ineffective assistance of counsel under the Sixth Amendment are examined through the two-part test initially set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a defendant making a Sixth Amendment claim of ineffective assistance of counsel must show: (1) that counsel's performance was deficient, meaning that "counsel's representation fell below an objective standard of reasonableness," *id*. at 688; and (2) that the deficient performance prejudiced the defendant, *id*. at 694.

The burden to establish ineffective assistance is "onerous." *Terrell v. GDCP Warden*, 744 F.3d 1255, 1261 (11th Cir. 2014). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (citation omitted). "[C]ases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Id*. at 1511 (citation omitted). Such claims undermine the finality of closed judicial proceedings, so "the rules governing ineffective-assistance claims must be applied with scrupulous care." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1912 (2017) (citation and quotations omitted).

In reviewing performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *See id*. at 689; *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (noting that counsel's conduct is unreasonable only if petitioner shows "that no competent counsel would have made such a choice"). To demonstrate prejudice, the petitioner must establish a "reasonable probability that, but for counsel's

6

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

As an evidentiary hearing is necessary as to the final ineffective assistance (direct appeal) claim, this Answer will primarily present only the law governing that claim. *See Aron v*, 291 F.3d at 714–15 ("As we have previously stated, if the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' . . . Aron has plainly alleged facts regarding his diligence that would entitle him to relief in the form of a timely petition. His allegations are not affirmatively contradicted by the record. Therefore, we find that the district court abused its discretion in failing to hold an evidentiary hearing. However, we note that if the district court should determine that Aron exercised due diligence, not all of Aron's claims will be timely.") (citations omitted). The Answer will then address Garcia's remaining claims and argue that they should be rejected as meritless.

**A. Ineffective Assistance of Trial Counsel**

1. <u>Claim 1: Failure to communicate and inform Garcia of the circumstances and consequences of pleading guilty rather than going to trial.</u>

Garcia's first claim asserts his counsel, attorney Jeff Gorman, was ineffective because "there was no reasonable communication from the beginning of his case between parties so that Garcia could effectively participate in his legal representation" (CVDE 1-1:14). Garcia continues that his counsel "never discussed any strategy" or "the correct possible outcome of a trial" and that "all he did was persuade Garcia to plead not guilty until they are able to get a favorable plea agreement" (CVDE 1-1:15).

Garcia cannot prove either prong of the *Strickland* test. First, as to his counsel's performance, Garcia's claims of a lack of communication with his counsel are rebutted by his own

7

accounts in the instant, sworn motion. For example, he states his counsel visited him to discuss his case "at the request of [Garcia's] parents" and "before his court hearings" (CVDE 1-1:15).

Furthermore, Garcia testified at the change-of-plea hearing that that those interactions were sufficient such that they discussed the essential aspects of his case including, but not limited to, the plea agreement and all its implications. Specifically, Garcia stated under oath:

> THE COURT:  Mr. Garcia, do you understand that you have a right to plead not guilty to any offense charged against you and to persist in a not guilty plea?
>
> GARCIA:   Yes, Your Honor.
>
> THE COURT:  Do you understand that if you pleaded not guilty, you would have the right to have a trial by a jury at which the Government would have to prove your guilt beyond a reasonable doubt?
>
> GARCIA: Yes, Your Honor.
>
> THE COURT:  Do you understand that if you decided to go to trial, you would be presumed to be innocent; and if you decided not to testify or put on any evidence, those decisions could not be used against you?
>
> GARCIA:  Yes, Your Honor.
>
> THE COURT:  Do you understand that if you decided to go to trial, you would have the right to assistance of counsel for your defense; you would have the right to see and hear all of the Government's witnesses and have them cross-examined on your behalf; you would have a right to see and hear all of the Government's evidence; and you would have the right to issue subpoenas of your own to compel witnesses to testify on your behalf.  Do you understand that if you decided to go to trial, you would have all of those rights?
>
> GARCIA: Yes, Your Honor.
>
> THE COURT: Do you further understand that by entering a plea of guilty, if your plea is accepted by this Court, there will be no trial and you will have waived or given up your right to that trial as well as all of those other rights that I have just mentioned?
>
> GARCIA: Yes, Your Honor.

(Change of plea at 16-17).

Accordingly, his claims that Gorman did not inform him of the "correct possible outcome of a trial" are baseless, as he asserted under oath in Court that he did indeed understand the implications of the plea agreement and that the benefits it afforded on Garcia would result in some tradeoffs, including the right to a trial. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings . . . The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible") (citations and quotations omitted). Therefore, the first prong fails as his counsel's performance was reasonable and sufficient to complete his duty to his client.

Furthermore, as to the prejudice prong, even if his counsel did not sufficiently communicate with Garcia regarding the option to go to trial, the Court illustrated those realities at length for Garcia during the change of plea hearing, as demonstrated above. Additionally, Garcia never demonstrated any intention of proceeding to trial. In fact, shortly after his arrest, Garcia confessed to knowing that the victim was 15 years old, and that on numerous occasions, he asked the victim to produce and send sexually explicit images and videos to him. Ultimately, he was not prejudiced, as he was fully informed of his options by his counsel, as established by his own admission and sworn testimony. In fact, it is the longstanding law of this Circuit that representations made under oath at a plea colloquy are entitled to a strong presumption of truth. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citation omitted); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

Garcia also claims that "Gorman was stuck with only one strategy- to let Garcia plead guilty since he was absolute that he had no legal defense or possibility of winning a trial" (CVDE 1-1:16). But, as explained above, Garcia was informed of the consequences of pleading guilty rather than proceeding to trial; Garcia never intended to proceed to trial. That decision was Garcia's to make, informed by Gorman. Furthermore, it is well established that the law is highly deferential to the legal strategies of attorneys as long as they are reasonable. It "is a matter of professional judgment" and trial strategy and falls squarely within the province of the attorney handling the matter. *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010). The Court should, therefore, deny this claim.

   2. Claim 2: Failure to conduct an adequate and independent pretrial investigation

Garcia's second claim states his counsel failed to conduct a pretrial investigation of his case. He elaborates saying his counsel "failed to research the case law or investigate the facts of Garcia's case" and that there was no investigation to "challenge the government's case in chief" (CVDE 1-1:17). Garcia also states that a criminal investigation would have required his counsel to "piece together evidence, often circumstantial, and from multiple sources to prove innocence or guilt" and "had he done so, there is a reasonable probability that Garcia would have proceeded to trial or benefited with a significantly less harsh sentence" (*Id*.).

Garcia provides no support for this conclusory contention. For example, he does not explain what his counsel may have or should have uncovered. Garcia has failed to show that his trial counsel's alleged failure to conduct a pretrial investigation contributed to his "actual prejudice." To the contrary, the evidence against Garcia, which came mostly from Garcia's own statements to the police and the cell phone and password he voluntarily turned over, was overwhelming in this case, and far more than circumstantial. For example, the text messages

between Garcia and the victim included months of conversations involving sexual topics, eventually escalating to Garcia asking the victim to perform sexual acts and send him pictures (PSR ¶ 8-14). They also included Garcia's request for the victim to perform sexual acts on Garcia and a plan to meet up to accomplish it (*Id*.). Garcia admitted to all of this upon his arrest, including that he knew the victim was 15 years old and that he did indeed request the victim to perform the acts and drove to a park to meet up with him because he was "horny" (*Id*. at 13). In addition, Garcia signed and swore that the facts stated above, which were also included in the factual proffer, were true (DE 15). Ultimately, Garcia has not demonstrated that his counsel failed to do his due diligence and conduct an appropriate investigation, and he has not shown that he was prejudiced, especially considering the evidence against him and his own sworn statements. Accordingly, this claim should be denied.

3. Claim 3: Failure to attempt to negotiate a favorable plea agreement

Garcia claims his counsel was constitutionally ineffective because he "misrepresent[ed] material facts, which Garcia wholly relied on" and therefore "constituted deficient performance" (CVDE 1-1:23). Specifically, Garcia states that he "reasonably believed from [Gorman's] advice that if he were to take the government's plea offer, he would receive a significantly lower sentence" (*Id*.). He also claims "the government's plea agreement was skewed in favor of the government and did not have any benefit for Garcia" and that "on sentencing day…his sentence was enhanced to greater prison time due to additional enhancements which were not discussed in his PSR" (*Id*.).

These claims are again contradicted by the record as well as Garcia's own sworn statements. As to Garcia's possible sentence, there was no prejudice as the Court explicitly went over the possible sentencing ranges for each count:

> THE COURT: Paragraph three says the defendant also understands and acknowledges that as to count one, the Court must impose a minimum term of

11

imprisonment of 15 years and may impose a statutory maximum term of imprisonment of up to 30 years followed by a term of supervised release of up to life. The defendant also understands and acknowledges that as to Count II, the Court must impose a minimum term of imprisonment of ten years and may impose a statutory max term of imprisonment of up to life followed by a term of supervised release of up to life. These sentences of imprisonment may run consecutively for a total sentence of 25 years to life. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000, may order forfeiture and must order restitution. Mr. Garcia, do you understand that those are the mandatory minimum and maximum penalties that apply in your case?

GARCIA: Yes, ma'am.

(Change of plea at 7).

The Court further established the potential range of sentence and Garcia's knowing acceptance of its terms during the change of plea hearing, to which Garcia swore he understood and agreed to:

THE COURT: Mr. Garcia, does this plea agreement represent in its entirety all of the understanding that you have with the Government?

GARCIA: Yes, Your Honor.

THE COURT: Do you understand the terms of the plea agreement?

GARCIA: Yes, Your Honor.

THE COURT: Do you agree to the terms of the plea agreement?

GARCIA: Yes, Your Honor.

THE COURT: Has anyone made any other or different promises or assurances of any kind to you to get you to enter this plea agreement?

GARCIA: No, Your Honor.

THE COURT: Are you pleading guilty of your own free will because you are, in fact, guilty of these offenses?

GARCIA: Yes, Your Honor.

> THE COURT: Do you understand that the terms of the plea agreement are merely recommendations to the Court, and the district judge assigned to this case can reject those recommendations without permitting you to withdraw your plea of guilty?
>
> GARCIA: Yes, Your Honor.
>
> THE COURT: Do you understand that the district judge could impose a sentence on you that is more severe than you may anticipate?
>
> GARCIA: Yes, Your Honor.
>
> …
>
> THE COURT: Have you and your lawyer talked about how the sentencing guidelines might apply to you?
>
> GARCIA: Yes, briefly, we did.
>
> THE COURT: Do you understand that in determining your sentence, the district judge will calculate the sentencing guideline range as well as any possible departures or other factors under federal law?
>
> GARCIA: Yes, Your Honor.
>
> …
>
> THE COURT: Do you further understand that the sentence imposed on you may be different from any estimate your lawyer has given you?
>
> GARCIA: Yes, Your Honor.

(Change of plea at 9–10, 15–16).

Accordingly, he cannot establish that a baseless claim of "misrepresentation of fact" by his counsel prejudiced him in anyway, as he agreed to the terms of the plea agreement freely and asserted his counsel explained them to him under oath to the Court. Furthermore, the Court repeatedly expressed and emphasized that Garcia could face a sentencing range of 25 years to life and that that determination was up to the Court. Accordingly, Garcia suffered no prejudice, as he was fully aware of his potential sentence.

As to his claim that his "sentence was enhanced" at his sentencing hearing with "additional enhancements not included in his PSR," that is factually incorrect. The only agreement in place at the time was the plea agreement, which did not establish any sentence (DE 38). At sentencing, the Court imposed a sentence of 310 months, in the middle of his guideline range. The claim fails as there was no enhancement imposed by the Court at sentencing (separate from those included in the PSR), and no prejudice suffered by Garcia, as his sentence fell within the guideline range. Accordingly, Garcia's claim should be denied.

### B. Ineffective Assistance of Sentencing Counsel

1. <u>Claim 1: Failure to discuss and explain the PSR to Garcia.</u>

As to this claim, Garcia states his counsel "failed to review, discuss, or explain the content of his PSR" (CVDE 1-1:25). However, the record shows he was fully aware of the PSR and what it contained. In Garcia's sworn testimony during sentencing, he stated:

> THE COURT: Mr. Garcia, have you had an opportunity to review the presentence investigation report with your attorney?
>
> GARCIA: Yes, Your Honor.
>
> THE COURT: Do you need any additional time to discuss that with your attorney?
>
> GARCIA: No, Your Honor.
>
> THE COURT: Okay.

(Sentencing at 7-8).

Furthermore, Garcia was interviewed by a probation officer for the facts within the PSR, as to his personal background. (PSR ¶ 41-48). During the plea colloquy, Garcia affirmed that he knew that his sentencing was contingent on the Court's review of the PSR prepared by Probation (Change of plea hearing at 15); that he had the right to counsel during his interview with Probation

14

for the PSR (*Id*.); and that he had the right to file written objections to the PSR (*Id*.). Garcia was under oath when he affirmed that he understood the explanation of the Court. As per the above sworn testimony, the record shows Garcia was well briefed on the contents of the PSR and its implications.

Accordingly, Garcia fails to show that Gorman acted deficiently. He does not even allege how he may have been prejudiced. The Court should deny this claim.

2. Claim 2: Failure to file substantive objections to the PSR.

Garcia contends his counsel was ineffective for not filing objections to the § 4B1.5(b)(1) enhancement in his PSR (PSR ¶ 31). He states his "PSR clearly implies no record of prior sex offense conviction for him to be considered a repeat offender" and had his counsel objected to this enhancement, his sentence could have been "reduced accordingly" (CVDE 1-1:29).

Garcia, however, mischaracterizes this enhancement in his offense level. The enhancement is based on a "pattern of activity" (PSR ¶ 31). In this case, the pattern resulted from two separate instances on two separate dates where Garcia first attempted the production of visual depictions of sexual exploitation of minors (count I) on November 22, 2021, and later, attempted enticement of a minor (count II) on November 23, 2021 (PSR ¶ 31). Accordingly, Garcia does fall under "repeat offender" for purposes of this enhancement. It is possible Garcia is conflating "repeat offender" with "career offender", which the PSR states clearly that he does not fall under (*Id*.).

Furthermore, the decision of whether or not to file an objection "is a matter of professional judgment" and trial strategy and falls squarely within the province of the attorney handling the matter. Garcia's claim that he requested that his counsel look into an entrapment defense, which his counsel "discouraged" also falls under this law, as his counsel's trial strategy is a matter of professional judgment (*Id*. at 25). *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010) ("…we

15

will not judge counsel's trial strategy in hindsight. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate. Counsel's decisions on matters of tactic and strategy. . . do not amount to ineffective assistance of counsel.") There are numerous possibilities as to why Garcia's counsel did not file certain objections or assert certain defenses including that he did not believe it was an objection or claim with merit.

The Court should therefore deny this claim.

3. <u>Claim 3: Failure to object to Garcia's sentence being substantively unreasonable.</u>

Garcia claims that his sentence was "substantively unreasonable" and his counsel failed to object to it. He asserts further that his counsel "failed to file any kind of motion for a downward variance" (CVDE 1-1:30).

This claim should be denied because the record conclusively shows that counsel did request a variance during sentencing. During sentencing, Gorman argued a motion for a downward variance, stating:

> GORMAN: Your Honor, we are asking for a variance or downward departure.
>
> THE COURT: I'm sorry, I can't hear you well.
>
> MR. GORMAN: I'm sorry, Your Honor. Your Honor, we are asking for a downward departure or a variance in this case, certainly, the mandatory minimum of 15 years there. As we are put forward in our sentencing memorandum, we are not asking to go below that but given --
>
> THE COURT: Well, that would be a legal sentence.
>
> MR. GORMAN: Yes, ma'am. Given the nature of the offense, Your Honor, and the characteristics of the defendant, what you have heard today, I believe that the sentencing -- and we have provided evidence that the sentencing guidelines are outside of what is reasonable in this case. . . .

16

> Your Honor, the history of the defendant, he has no criminal history. He was a very productive member of society. He was somebody who other people looked up to, his family looked up to. . . . And as Dr. Landrum testified absent that set of circumstances, the regressive behavior would not have happened. Absent those circumstances, we would not be here. It is not in any way taking away his responsibility, and he is not asking the Court to do that, but it puts it into context of what happened to him. Your Honor, he cooperated fully with the Government, as if he was awoken. He cooperated and he admitted to everything. . . .Your Honor, there is no evidence that he has ever exhibited this type of behavior before. The sentence should reflect the seriousness of the offense, Your Honor, and decades behind bars certainly will; promote respect for the law, certainly the sentence that Your Honor is going to pronounce will do that. . . ."

(Sentencing hearing at 45-49).

As demonstrated, Garcia's counsel argued at length for a downward departure or variance in Garcia's sentence, invoking his good character history, his strong family ties, his lack of criminal history, and various factors in his favor. His counsel also put forth seven witnesses during sentences that testified on his behalf, including a psychologist who testified that it was his opinion that he was not a "pedophile" and had a "low risk to reoffend" (Sentencing at 38-39). His counsel put forth many other factors for the Court to consider that the Court admitted weighed in Garcia's favor in her sentencing considerations, including his "strong family connections and prior good works" (Sentencing at 50). It is the Court's decision ultimately how heavily to weigh those factors during sentencing, but just because Garcia did not like the ultimate decision of the Court, does not mean his counsel was an ineffective advocate in his defense

Furthermore, as to the alleged "unreasonableness" of Garcia's sentence, the assertion is factually incorrect. As discussed above, Garcia's crimes had the potential to result in a sentence of 25 years to life. The guideline range based on his total offense level of 40 and a criminal category of I, was 292 to 365 months (PSR ¶ 71). Garcia's sentence of 310 months fell squarely in the middle of that range and within the statutory requirements. Garcia is clearly displeased with his sentence but that does not make it unreasonable. Accordingly, Garcia has not proven any

17

misconduct on his counsel's part, nor any prejudice that befell him. Therefore, the Court should deny Garcia's claim.

    4. <u>Claim 4:  Failure to file a notice of appeal.</u>

Garcia's final claim rests on the assertion that his counsel "failed to file a Notice of Appeal on his behalf" (CVDE 1-1:31). He continues that "[Garcia] was not briefed that he could actually appeal his sentence" (*Id.*).

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court applied *Strickland* to a claim involving an attorney's failure to file an appeal on a defendant's behalf. The Court restated the well-settled rule that an attorney who fails to file an appeal on a defendant's behalf acts in a deficient fashion when the defendant specifically requested that such an appeal be filed. *Id.* at 477. In circumstances where no specific request was made, an attorney has a duty to consult the defendant if either (1) any rational defendant would want to appeal (if, for instance, there is a non-frivolous basis for an appeal) or (2) the defendant demonstrated an interest in appealing. *Id.* at 480; *see also Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007) ("adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal") (emphasis in original) (citation omitted). "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. Even when there is a guilty plea, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

As to the second *Strickland* prong, the Court held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484. And when an attorney disregards a specific request to appeal, "prejudice is presumed when counsel's deficient performance deprives a defendant of an appeal that he otherwise would have taken." *Rios v. United States*, 783 F. App'x 886, 891 (11th Cir. 2019) (citation omitted).

The government submits that an evidentiary hearing is necessary in accordance with the case law. In preparing to respond to the § 2255 motion, the undersigned spoke to Garcia's former counsel.[3] Garcia's former counsel disputes his allegations as to this claim. The Court's inquiry would benefit from an evidentiary hearing as to this claim.

---

[3]  *See Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("Notably, Johnson does not, and cannot, argue that these communications with his trial counsel are protected in this context by the attorney-client privilege. As we have explained, a party 'waives its attorney-client privilege when it injects into this litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct.' *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir.1987).").

## CONCLUSION

For the forgoing reasons, Garcia's first six claims (all claims under section A and claims 1-3 under section B) should be denied on the merits and his ineffective assistance (direct appeal) claim should be set for an evidentiary hearing.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   *s/ Carolina Perez Schmerold*
CAROLINA PEREZ SCHMEROLD
Assistant United States Attorney
Florida Bar No.: 1003503
99 Northeast 4th Street
Miami, Florida 33132
Email: Carolina.perez@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 24, 2023, I electronically filed the foregoing document and its attachments with the Clerk of the Court using CM/ECF and delivered the document and its attachments by United States Mail to *pro se* movant Juan Antonio Garcia, Reg. No. 77050-509, Petersburg Medium FCI, Federal Correctional Institution. P.O. Box 1000, Petersburg, VA 23804.

*s/ Carolina Perez Schmerold*
CAROLINA PEREZ SCHMEROLD
Assistant United States Attorney